RONALD A. MARRON (SBN# 175650)
ALEX T. SLIHEET (SBN# 153273)
LAW OFFICE OF RONALD A. MARRON, APLC,
3636 Fourth Avenue, Ste. 202
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
ron.marron@cox.net

LOIS BROWN KELLY, ESQ. (SBN# 134879)
ELDER LAW AND ADVOCACY
3675 Ruffin Road,
Ste., 315
San Diego, CA 92123
lkelly@seniorlaw-sd.org

Attorneys for Plaintiffs

FILED
07 JUN 12 PM 1:19
CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY: POC DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CELEDONIO D. RABE
EDITH S. RABE
Plaintiffs

vs.

BRIAN WHITE, an individual;
KEVIN ELMORE, an individual;
HERITAGE FUNDING GROUP, INC., a corporation;
WEST POINT MORTGAGE, INC., a corporation;
DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A., a corporation;
CENTRAL MORTGAGE COMPANY d/b/a CENTRAL MORTGAGE LOAN SERVICING COMPANY, a corporation;
PRINCIPAL LIFE INSURANCE COMPANY, a corporation;

Defendants

Case No. '07 CV 1070 BTM NLS

**COMPLAINT FOR:**

1. Violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*., and Federal Reserve Regulation Z. 12 C.F.R. § 226 *et seq*.;
2. Violation of the Real Estate and Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*. and Federal Reserve Regulation X, 24 C.F.R. § 3500 *et seq*.;
3. Violation of the Unfair Competition Act, California Business and Processions Code § 17200 *et seq*.;
4. Violation of the False Advertising Act, California Business and Processions Code § 17500 *et seq*.;
5. Constructive Fraud, California Civil Code, § 1573;
6. Intentional Misrepresentation, California Civil Code §§ 1709-1710;
7. Concealment, California Civil Code §§ 1709-1710;

) 8. Negligent Misrepresentation, California Civil Code §§ 1709-1710;
) 9. Rescission/Cancellation, California Civil Code §1689 & Court's Inherent Equitable Authority ;
) 10. Breach of Fiduciary Duty;
) 11. Negligence;
) 12. Breach of Implied Covenant of Good Faith and Fair Dealing;
) 13. Declaratory Relief
) 14. Elder Abuse: California Welfare & Institutions Code Section 15600 *et seq*;
) **JURY TRIAL DEMANDED**
)

## I.
## INTRODUCTION

1. Defendants engage in a bait and switch reverse mortgage equity stripping scheme to fraudulently sell an annuity. Mr. Celedonio Rabe and Mrs. Edith Rabe (hereinafter "Plaintiffs") are both 70 plus years old and financially unsophisticated seniors, who are unable to consummate real estate/annuity transactions without the help of professionals. These senior Plaintiffs relied solely upon the specific promises of these predatory Defendants, and each of them.

2. In the Spring of 2005, Defendants sent a flyer to Plaintiffs touting the benefits of a reverse mortgage which would eliminate the Plaintiffs' mortgage payments and allow the Plaintiffs to pull cash out of their growing equity during the housing bull market. Plaintiffs took the bait and called defendants. Once the bait was taken, defendants did a bait and switch and lied and told Plaintiffs that they were $42,000 short and could not do a reverse mortgage. Defendants then implemented their switch which was to issue a predatory loan combined with an annuity. As a result of the fraud, Plaintiffs did not receive the benefits of a reverse mortgage, i.e., the elimination of their monthly mortgage payments, cash out of their equity to use and enjoy, and a lower interest rate and lower

margin (set by law) on their reverse mortgage which would have greatly diminished the future loss on their remaining equity. Instead, Defendants switched Plaintiffs into a predatory loan with negative amortization, a much higher interest rate and margin, continued mortgage payments, and no cash out of equity to use and enjoy since they were told to buy an annuity with the cash-out to fund the predatory loan. Defendants falsified Plaintiffs' monthly income in order to qualify Plaintiffs' for their predatory loan/annuity sale.

3. Defendants engaged/engage in this behavior because the fees and commission on a reverse mortgage are fixed by law, but the fees and commissions on a predatory loan and an annuity are much higher. Defendants' motivation, and each of them, was to collect over **$15,300 (greater than 4 points even without the commissions from the annuity sale)** from Plaintiffs' equity in their home, based on points, commissions, fees, yield spread premiums, and junk fees. On a $370,000.00 loan which is what Plaintiffs received from Defendants, the U.S. National average of total fees is approximately **$5370.00.** [Source, Bankrate.com, November of 2005.]

4. Based on information and belief, Defendant Brian White has a pattern and practice of engaging in this **"reverse mortgage bait and switch equity stripping annuity scheme"** which is directed at seniors. Based on information and belief, Defendant Brian White has given lectures on how to implement his **"reverse mortgage bait and switch equity stripping annuity scheme."** Prior to 2005, Defendant Brian White and the entities that he associates with and/or owns,[1] would do the reverse mortgage, and then would still steer the seniors into the annuities. Subsequent to 2005, Defendant Brain White and his entities simply use the reverse mortgage as a bait in order to implement the scheme of steering the seniors into a predatory loan combined with an annuity. In this manner, the

[1] These entities include Defendant HERITAGE FUNDING GROUP, INC., and the entities Senior American Funding, Inc., f/k/a/ First California Funding Group, Inc., and Certified Escrow, Inc.

total fees and commission obtained by the scheme are increased over the fees and commissions that are set by law and would be obtained by a reverse mortgage. All of this was done at the direct expense of the Plaintiffs.

5. Defendants' conduct of targeting seniors such as Plaintiffs has been cited by the U.S. General Accounting Office to the U.S. Senate. See, "...Special Committee on Aging, U.S. Senate," Report from U.S. General Accounting Office GAO -04-280, February 24, 2004:

> "...elderly homeowners are disproportionately the targets of predatory lending. Abusive lenders tend to target homeowners who have substantial equity in their homes, as many older homeowners do. In addition, some brokers and lenders aggressively market home equity loans as a source of cash, particularly for older homeowners who may have limited incomes but require funds for major home repairs or medical expenses. Moreover, diseases and physical impairments associated with aging--such as declining vision, hearing, or mobility--can restrict elderly consumers' ability to access financial information and compare credit terms. Some older persons may also have diminished cognitive capacity, which can impair their ability to comprehend and make informed judgments on financial issues. Finally, several advocacy groups have noted that some elderly people lack social and family support systems, potentially increasing their susceptibility to unscrupulous lenders who may market loans by making home visits or offering other personal contact."

6. Predatory and abusive lending practices inflict wide-ranging damage on society: borrowers and their families can be devastated by these practices, which often result in non-judicial foreclosure of the borrowers' homes. Defendants in this action preyed upon Plaintiffs, an elderly couple, who are financially unsophisticated and unable to consummate real estate transactions without the help of real estate professionals. Plaintiffs seek rescission of the predatory loan in which they are trapped, equitable relief on behalf of the general public, and monetary damages. This is an action for declaratory judgment, permanent injunctive relief, and damages for predatory mortgage lending and

elder abuse. Punitive damages and treble damages are also sought to make an example out of these predatory Defendants.

## II.
## JURISDICTION AND VENUE

7. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus of related facts and form part of the same case or controversy under Article III of the United States Constitution.

8. The Court has jurisdiction over Plaintiffs' action for declaratory relief Pursuant to 28 U.S.C. section 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. section 2203 and Rule 65 of the Federal Rules of Civil Procedure.

9. Venue is proper in the Southern District of California Pursuant to 28 U.S.C. section 1391(b)(2) in that the unlawful conduct that gave rise to these claims occurred within the Southern District of California.

## III.
## DEFENDANTS ARE PREDATORY LENDERS AND BROKERS

11. There is no uniformly accepted definition of "predatory lending." However, the United States Department of Housing and Urban Development ("HUD") has defined predatory lending as lending "involving deception or fraud, manipulation of borrowers through aggressive sales tactics, or taking unfair advantage of a borrower's lack of understanding about loan terms." *Curbing Predatory Home Mortgage Lending* (June 2000), a joint report of the Department of Housing and Urban Development and the Treasury Task Force on Predatory Lending ("HUD report") at 1. According to HUD, "[t]hese practices are often combined with loan terms that, alone or in combination, are abusive or make the borrower more vulnerable to abusive practices." *Id.*

12. HUD and the United States General Accounting Office ("GAO") have identified various lending practices as predatory. Since predatory lenders are constantly developing new techniques to take advantage of borrowers, any enumeration of predatory practices necessarily will be incomplete. Nevertheless, it is generally accepted by the lending industry and government agencies that monitor that industry that predatory lending practices include: (a) engaging in aggressive, high-pressure and/or misleading sales tactics; (b) lending without regard to the borrower's ability to repay; (c) imposing excessive prepayment penalties that trap borrowers into predatory loans; (d) making misrepresentations or to otherwise misleading borrowers about loan terms; (e) falsifying loan documents; (f) targeting low-income, elderly and minority borrowers for predatory lending campaigns; (g) charging excessive fees, points and interest rates unrelated to the borrower's credit/risk profile; (h) misleading borrowers about the borrower's credit/risk profile to steer borrowers to a higher-cost loan that is not justified by the borrower's true profile; and (i) causing borrowers to refinance loans multiple times over a short period of time without any economic gain to the borrowers. HUD Report at 2; *Federal and State Agencies Face Challenges in Combating Predatory Lending* (January 2004), a report by the United States General Accounting Office ("GAO") Report at 3-4, 18-19. These and similar practices, individually and collectively, are referred to herein as "predatory lending" practices. Defendants engaged in most of the above practices toward Plaintiffs.

13. Predatory lenders use prepayment penalties as a means to trap borrowers into loans with onerous terms. GAO Report at 19. Borrowers cannot refinance and escape those onerous terms without incurring thousands of dollars in new fees or paying prepayment penalties, further stripping the equity from their homes. Defendants engaged in this practice toward Plaintiffs.

14. Predatory lenders frequently deceive borrowers and engage in outright fraud through practices such as falsifying loan applications. GAO Report at 19. The elderly are primary targets and victims of predatory lending practices. Predatory lenders prey on the elderly who are financially unsophisticated and/or lack access to mainstream financial outlets. HUD Report at 22; GAO report at 25. Defendants engaged in this practice toward Plaintiffs.

15. Predatory lending practices often lead homeowners into a cycle of refinancing, foreclosure, economic ruination and segregation from conventional credit sources. HUD Report at 87. On a larger scale, when predatory lending practices are concentrated in specific areas—as they frequently are—communities suffer from destabilization through the loss of equity, distressed and vacant properties, and stifled economic development. GAO Report at 20. This causes a depression in property values and requires a entire neighborhoods to pay the price for the wrongful practices of unscrupulous lenders.

16. Subprime lending, which is not predatory lending, is a rapidly growing segment of the mortgage market which generally consists of borrowers who, for a variety of reasons, might be denied access to market-fair credit due to their perceived "credit risk." A typical borrower in the subprime mortgage market is "house-rich" but "cash-poor," having built up equity in their home but in little else, and has a lower net income than the average borrower. Subprime lenders generally charge **somewhat** higher interest rates to account for the increased **"credit risk"** associated with these loans. *There is no great capital risk to subprime lending because lenders have their money secured by the real estate, and in general do not lend above 70% of the appraised value to ensure repayment of the principal of the loan as well as coverage for any foreclosure cost.* If lenders do lend at a higher loan to value figure, the lenders can always demand mortgage insurance from the borrower.

17. However, unscrupulous lenders/brokers have up-played the "credit risk" argument in the subprime market to justify engaging in predatory lending which is nothing less than an attempt to steal as much money as possible from the equity in a borrower's home, and this includes designing a transaction which will intentionally lead to a foreclosure on the borrower's home. These lenders/brokers are called predatory because they prey on financial naïve borrowers who are cash poor but equity rich. The Defendants in this complaint are predatory lenders and brokers.

18. A predatory mortgage broker acts as the agent of the lender and abandons their fiduciary duty to the buyer. The predatory mortgage broker "preys" on the borrower to take as much money in fees, costs, commissions as possible from the equity in the borrower's home. Predatory

lenders engage in the same conduct and/or adopt a closed eye posture to the predatory mortgage broker's forged applicants' data on loan applications.

19. Plaintiffs alleges that Defendants, and each of them, teach their employees/agents to lure borrowers with promises that their loans will have certain terms and conditions, knowing Defendants have no intent of providing such loans, and then use slight of hand paper shuffling tactics, high-pressure sales tactics, or outright fraud to induce borrowers to sign loan contracts with significantly less favorable terms and conditions. Plaintiffs alleges that Defendants failed to provide required disclosures, failed to leave a true copy of loan documents in borrowers' possession, unlawfully induced borrowers to enter into mortgages knowing that borrowers will not be able to meet the monthly mortgage payments based on their monthly income or where excessive or unfair fees are levied, that mortgage salespeople and brokers forged applicants' data on loan applications, and that Defendants insert pre-payment penalties to their predatory loans in order to lock borrower's into the loans and garner further fees, costs and commissions through inevitable refinancing.

## IV.
## PARTIES

20. Plaintiff, Celedonio Rabe (hereinafter "Mr. Rabe" or Plaintiffs) was at all relevant times mentioned herein a resident of San Diego, California. Mr. Rabe is 74 years old. Plaintiff, Edith Rabe (hereinafter "Mrs. Rabe" or Plaintiffs) was at all relevant times mentioned herein a resident of San Diego, California. Mrs. Rabe is 72 years old. Plaintiffs are financially unsophisticated seniors and unable to consummate real estate/annuity transactions without the assistance of professionals. Accordingly, Plaintiffs reasonably relied on the oral statements of all Defendants, and each of them, in the entire loan process.

21. Plaintiffs are informed and believes and thereon alleges that Defendant DOWNEY SAVINGS AND LOAN, F.A. (hereinafter "DOWNEY") is a corporation doing business in the State of California. DOWNEY's business address 3501 Jamboree Road, Newport Beach, CA 92660. Plaintiff is informed and believes that DOWNEY sold the loan to Defendant Central Mortgage Company d/b/a

Central Mortgage Loan Servicing Company (hereinafter "CENTRAL") which is a corporation doing business in the State of California. CENTRAL's business address is 801 John Barrow Rd Ste. 1, Little Rock, AR 72205

22. Plaintiffs are informed and believe and thereon allege that Defendant HERITAGE FUNDING GROUP, INC. ("HFG") is a California Corporation doing business in the State of California. Plaintiffs further allege on information and belief that Defendant Brian White is one of the owners of HFG. HFG's business address is also 2650 Camino Del Rio N., Ste 350, San Diego, CA 92108. Defendant Brain White is also the Agent for service of Process of HFG.

23. Plaintiffs are informed and believe and thereon allege that Defendant BRIAN W. WHITE (hereinafter "WHITE") is a California resident, a licensed real estate professional and insurance broker, and was at all relevant times herein mentioned was an owner, agent and/or employee of the corporate Defendants. Plaintiffs are further informed and believe, and thereon allege, that at all relevant times herein Defendant WHITE engaged in the deceptive acts and practices which will be alleged below while acting within the scope of this employment with the corporate Defendants. WHITE's business address is 2650 Camino Del Rio N., Ste 350, San Diego, CA 92108. Defendant WHITE is also a registered insurance agent for Defendant PRINCIPAL LIFE.

24. Plaintiffs are informed and believe and thereon allege that Defendant KEVIN ELMORE (hereinafter "ELMORE") is a California resident, a licensed real estate professional and was at all relevant times herein mentioned was an owner, agent and/or employee of the corporate Defendants. Plaintiffs are further informed and believe, and thereon allege, that at all relevant times herein Defendant ELMORE engaged in the deceptive acts and practices which will be alleged below while acting within the scope of this employment with the corporate Defendants. Defendant ELMORE's business address is 1121 Columbia Street, San Diego, CA 92101.

25. Plaintiffs are informed and believe and thereon allege that Defendant WEST POINT MORTGAGE, INC. ("WPM") is a California Corporation doing business in the State of California. Plaintiffs further allege on information and belief that Defendant KEVIN ELMORE is one of the owners of WPM. WPM's business address is 1121 Columbia Street, San Diego, CA 92101.

26. Plaintiffs are informed and believe and thereon allege that Defendant Principal Life Insurance Company (hereinafter "PRINCIPAL LIFE") is a corporation selling insurance products and doing business in the State of California with its headquarters at 711 High Street, Des Moines, IA 50392.

27. At all times mentioned in the causes of action alleged herein, each and every Defendant was an agent and/or employee of each and every other Defendant. In doing the things alleged in the causes of action stated herein, each and every Defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission and authorization of each of the remaining Defendants, or otherwise acting with apparent authority. All actions of each Defendant as alleged in the causes of action stated herein were ratified and approved by every other Defendant or their officers or managing agents. Defendant knowingly and substantially participated in the conduct as alleged herein.

28. Defendants WHITE/HFG/ELMORE/WPM, and each of them, functioned as the agents of Defendant DOWNEY who was the lender and abandoned their fiduciary duties to the Plaintiffs. Defendants, WHITE/HFG/ELMORE/WPM, and each of them, committed fraud regarding the Plaintiffs in terms of procuring their loan and selling them an annuity.

29. At all times herein relevant, there existed a civil conspiracy between Defendants, and each of them, the object of which was to reap substantial profits by targeting California seniors to engage in transactions which were not for Plaintiffs' benefit so as to increase fees and commissions, for the sale of unsuitable adjustable rate mortgages and thereafter seek to profit by foreclosure or refinancing on the seniors' equity in their homes. Said conspiracy also included a common plan or design to falsify the loan applications, to obscure the terms of the loan applications and to mislead and deflect any questions or complaints raised by the seniors regarding the loan applications.

30. When this complaint references an act of any Defendant or Defendants, such allegation shall be deemed to mean the act of those Defendants named in the particular cause of action and each of them acting, individually, jointly and severally.

**V.**
**"DEFENDANTS'**
**"Reverse mortgage bait and switch equity stripping annuity scheme"**

31. Plaintiffs hereby repeats and incorporates by this reference the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

32. At all times relevant herein, Plaintiffs were over the age of 70. Plaintiffs have been living at their home located at 8958 Cord Lane, San Diego, California since December of 1978. Plaintiffs are financially unsophisticated seniors and unable to consummate real estate/annuity transactions without the assistance of professionals. Accordingly, Plaintiffs followed the Defendants instructions, and reasonably relied on the oral promises of all Defendants in the loan process.

**Part 1: Defendants' Reverse Mortgage Bait to Seniors**

33. In the Spring of 2005, with interest rates still near their historical lows, Plaintiffs received a flyer from HFG/WPM touting the benefits of a reverse mortgage and that Plaintiffs could take cash out of their home and eliminate their monthly mortgage payments through a reverse mortgage. A promise Defendants had no intention of fulfilling.

34. Plaintiffs called the phone number and spoke with an individual representative of HFG/WPM whose current name is unknown. Plaintiffs already had a mortgage on their home with a current interest rate of approximately 6.5% **fixed** and current payments of approximately $1,200.00 per month. Plaintiffs' monthly income was approximately $1900.00 - $2100.00 from social security, and Plaintiffs informed Defendants of this fact.

35. Plaintiffs had plenty of equity in their home to do the reverse mortgage because their home was valued at $570,000.00 with a current loan of only $218, 235.31.

36. A representative of HFG/WPM came out to Plaintiffs' home.

**Part 2: Defendants' Switch to equity stripping through a predatory loan/annuity:**

37. After the bait, Defendants proceed to their switch. Defendants told Plaintiffs that they did not qualify for a reverse mortgage because they were $42,000.00 short. This was a lie. Defendants then told Plaintiffs that they had an alternative plan that was just as good as a reverse mortgage where Plaintiffs could still get cash out of their equity and lower their payments.

38. Defendants' plan B was to do a predatory loan and an immediate annuity.

39. Defendants then intentionally and without Plaintiffs' knowledge, put down on the loan application that Plaintiffs had a monthly income of $7048.00 in order to be able to qualify Plaintiffs for the predatory loan, get the money from the loan and sell Plaintiffs an annuity. Defendants, and each of them, did this deliberately and intentionally and secretly because they wanted to collect fees, points and commissions regardless of its effect on Plaintiffs. This false income was kept a secret from Plaintiffs. Plaintiffs relied on Defendants and their oral promises and discussions exclusively.

40. Based upon information and belief, Defendants WHITE/HFG/ELMORE/WPM failed to provide Plaintiffs with a timely or accurate Truth In Lending Act ("TILA") disclosure statement on their telephonic loan application.

41. Based upon information and belief, Defendants WHITE/HFG/ELMORE/WPM also failed to provide Plaintiffs with the proper documentation on their telephonic loan application.

42. All along and at the closing on April 29, 2005, Defendants, and each of them, assured Plaintiffs that he was qualified for the loan and that the loan was in their best interest.

43. On April 29, 2005, Defendants presented Plaintiffs with documents and had Plaintiffs sign the documents as instructed. Defendants, and each of them, did not discuss with Plaintiffs the terms, conditions or risks of the loan, the interest rate, margin or the negative amortization feature.

44. Defendants also had Plaintiffs incur and pay a pre-payment penalty of approximately $5000 on the previous mortgage, and Defendants proceeded to charge Plaintiffs unreasonable, duplicative and unearned fees, totaling greater than $15,300. On a $370,000.00 loan which is what Plaintiffs received from Defendants, the U.S. national average total fees are **$5270.00**. [Source, Bankrate.com, November of 2005.]

45. At the closing, which based on information and belief was held at Plaintiffs' home, Defendants asked Plaintiffs to sign documents without telling Plaintiffs that they should read the documents and ask questions, and without explaining the terms, conditions, or risks to Plaintiffs.

46. All along and at the closing, Defendants orally assured Plaintiffs that they were qualified for the loan.

47. At the closing, Defendants failed to tell Plaintiffs that they did not have to go through with the loan or explain the risks that Plaintiffs may lose their home if they were not able to pay the monthly mortgage. At the closing, Defendants simply instructed Plaintiffs to sign the documents. Plaintiffs followed their oral instructions.

48. As if Defendants' predatory conduct was not bad enough, Defendants inserted a typical predatory pre-payment penalty through a rider into their predatory loan to get more fees and commissions should Plaintiffs attempt to get out of or refinance their predatory loan.

49. In April 2005, Plaintiffs received a TILA statement by Defendant DOWNEY.

50. On information and belief, Plaintiffs never received a Good Faith Estimate ("GFE") which is required by RESPA and the Mortgage Loan Disclosure ("MLD") which is required by the California Department of Real Estate.

51. Defendant WHITE came to Plaintiffs' home to conclude the implementation of his scheme and to have Plaintiffs sign for the PRINCIPLE LIFE annuity which was funded from the cash-out of closing on the predatory loan of approximately $137,000.00

52. The value of the services the Defendants, and each of them, provided to Plaintiffs in terms of the "**reverse mortgage bait and switch equity stripping annuity scheme"**, the loan process, and in falsifying their income on the loan application is ZERO.

53. As a direct result of the Defendants' "**reverse mortgage bait and switch equity stripping annuity scheme,** Plaintiffs did not receive the benefits of a reverse mortgage, i.e., the elimination of their monthly mortgage payments; did not receive cash out of their equity to use and enjoy; did not receive a much lower interest rate and lower margin (set by law) on their reverse mortgage which would have greatly diminished the future loss on their remaining equity. Instead, Defendants switched Plaintiffs into a predatory loan with negative amortization, a much higher interest rate and margin, continued mortgage payments, and no cash out of equity to use and enjoy since they were told to buy an annuity with the cash-out to fund the predatory loan. As of the end of 2006, Plaintiffs' predatory loan has climbed in principle balance from $370,000.00 to $390,549.44 and carries an 8.2075% interest rate and a 3.45% margin. The current interest only payment on the

predatory loan would be $2671.20 and the payments will more than double in the next two years. Defendants falsified Plaintiffs' monthly income in order to qualify Plaintiffs' for their predatory loan/annuity sale.

## VI.
## INJURIES

54. Based upon Defendants reverse mortgage bait and switch equity stripping annuity scheme, there now exists an actual controversy between the parties regarding Defendants' duties under applicable law. Therefore, Plaintiffs are entitled to declaratory relief.

55. Defendants have illegally gained fees, commissions and profits from Plaintiffs as described herein. Therefore, Plaintiffs are entitled to restitution.

56. Unless enjoined, Defendants will continue to engage in the unlawful acts described above. Plaintiffs continues to suffer irreparable harm from Defendants unlawful acts unless relief is provided by this Court. Accordingly, Plaintiffs are entitled to injunctive relief.

57. Defendants acted intentionally, maliciously, wantonly, recklessly and in bad faith as described herein. Accordingly, Plaintiffs are entitled to punitive damages.

## VII.
## CAUSES OF ACTION

### 1st CAUSE OF ACTION
**Violation of the Truth in Lending Act,**
**15. U.S.C. § 1601 *et seq*., and Federal Reserve Regulation Z. 12 C.F.R. § 226 *et seq*.;**
**(Against all Defendants except PRINCIPLE LIFE)**

58. Plaintiffs reallege and incorporate by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

59. Plaintiffs have served Defendant DOWNEY and CENTRAL with written Notice of Cancellation as authorized under the TILA.

60. Defendants DOWNEY and CENTRAL are a creditor within the meaning of the Truth In Lending Act ("TILA") as implemented by Regulation Z.

61. Defendants violated TILA and Regulation Z by failing to provide Plaintiffs with appropriate material disclosure required under TILA, including but not limited to the following:

a) Defendants, and each of them, falsified Plaintiffs' loan information, and closed their eyes to the ability of Plaintiffs herein to repay the loan;

b) Plaintiffs was over charged for closing costs, commissions and related fees, which Defendants failed to disclose to Plaintiffs and which were not bona fide and not reasonable and thus were "finance charges" under TILA that required proper disclosure which Defendants did not make in their TILA(s) and which altered the entire accuracy of the Defendant's TILA. Defendants WHITE/HFG/ELMORE/WPM, functioned as the agents of Defendant DOWNEY and abandoned their fiduciary duties to Plaintiffs. Defendant DOWNEY split fees and paid the other Defendants under the guise of paying their fees, costs and commissions, but these payments were finance charges because the value of the services of these Defendants actually performed for Plaintiffs by implementing their **reverse mortgage bait and switch equity stripping annuity scheme** as alleged above, is ZERO. Defendants targeted Plaintiffs with flyers and telephone solicitations; made promises they had no intent on fulfilling of being able to eliminate their mortgage through the use of reverse mortgage, lied to Plaintiffs that they were $42,000 short to do a reverse mortgage, and then switched Plaintiffs into a predatory loan and annuity so that Defendants could receive higher fees, points, yield spread premiums ("YSP") and commissions. Thus, Defendants' fees, points, YSP and commissions were not bona fide and were not reasonable and were "finance charges" under TILA that required proper disclosure in the TILA and which altered the accuracy of the entire TILA.

62. Any and all statute(s) of limitations relating to disclosure and notices required under 15 U.S.C. Section 1601 *et seq*. were tolled due to the Defendants' failure to effectively provide the required disclosures and notices.

63. An actual controversy now exists between Plaintiffs, who contends they have the right to rescind the DOWNEY loan(s) alleged in this complaint, and, based on information and belief, Defendant DOWNEY and CENTRAL who deny that right.

64. As a direct and proximate result of these violations, Plaintiffs was and continues to be damaged in an amount according to proof but not yet ascertained including, without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

65. Defendant was unjustly enriched at the expense of the Plaintiffs who is therefore entitled to equitable restitution and disgorgement of profits obtained by defendant.

66. Plaintiffs believes that the acts of Defendant as describe herein were willful, wanton and in conscious disregard of the rights of Plaintiffs and on that basis allege that Plaintiffs are entitled to recover punitive damages in a mount to be established at trial.

WHEREFORE, Plaintiffs prays for relief as set forth below.

## 2nd CAUSE OF ACTION

**Violation of the Real Estate and Settlement Procedures Act,**
**12 U.S.C. § 2601 *et seq*. and Federal Reserve Regulation X, 24 C.F.R. § 3500 *et seq*.;**
**(Against all Defendants except PRINCIPAL LIFE)**

67. Plaintiffs reallege and incorporate by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

68. The loan(s) to Plaintiffs by Defendant DOWNEY are federally related mortgage loans defined in the Real Estate Settlement Procedures Act ("RESPA") and implemented by Regulation X which are broad in terms of their requirements.

69. Defendants violated Section 8(a) of RESPA, 12 U.S.C. § 2607(a), which provides that "no person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

70. Defendants also violated Section 8(b) of RESPA, 12 U.S.C. § 2607(b), provides that "no person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving

a federally related mortgage loan other than for services actually performed." Section 8 violations are further defined by 24 C.F.R. § 3500.14, "Prohibition against kickbacks and unearned fees."

71. Also, HUD addressed payments in the form of yield spread premiums ("YSP"), and explained that "in some cases less scrupulous brokers and lenders take advantage of the complexity of the settlement transaction and use yield spread premiums as a way to enhance the profitability of mortgage transactions without offering the borrower lower up front fees." Id. at 53,054.

72. Defendant DOWNEY paid to Defendants WHITE/HFG/ELMORE/WPM a YSP on Plaintiffs' loan of over $11,000, and no Defendant offered the Plaintiffs lower up front fees for this YSP payment.

73. Moreover, HUD established a two-part test for determining the legality of lender payments to mortgage brokers under RESPA: (1) Whether goods or facilities were actually furnished or the services were actually performed for the compensation paid, and (2) whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed. HUD, Statement of Policy 2001-1, 66 Fed. Reg. at 53,052.

74. In this case Defendants, and each of them, engaged in goods/services that were not actually performed and where the payments were not reasonably related to the value of the goods/services because the Defendants' chose to implement their "**reverse mortgage bait and switch equity stripping annuity scheme**" as alleged above.

75. The value of the services that Defendants actually performed for Plaintiffs by implementing their "**reverse mortgage bait and switch equity stripping annuity scheme**" is ZERO.

76. Defendants acceptance of a YSP and/or other payments and Defendant DOWNEY's payment of that YSP or other payments, was an unlawful kickback and /or an unearned fee under RESPA because it was not reasonably related to the performance of lawful services by the accepting Defendants. Defendant DOWNEY split fees with the brokers and kept part of the fee itself. Instead of performing lawful services, the accepting Defendants implemented their "**reverse mortgage bait and switch equity stripping annuity scheme**" as alleged above.

77. Defendant DOWNEY should have know that Defendant did not earn the YSP or other payments because, *inter alia*, "...common industry practice is that lenders follow underwriting standard that demand a review of originations and therefore lenders typically know that brokers have performed the services required..." HUD's 2001-1 Policy Statement at 53055. If Defendant DOWNEY had reviewed Plaintiffs' loan origination, including their loan application, DOWNEY would have learned of the obvious red flags it contained in terms of Plaintiffs being retired and living on social security.

78. RESPA also prohibits any person from accepting an excessive or unearned fees. All fees on Plaintiffs' loan are excessive or unearned because the loan was not reasonably related to the performance of lawful services, in that it had been falsified through defendant implementation of their "**reverse mortgage bait and switch equity stripping annuity scheme"** as alleged above. Defendants WHITE/HFG/ELMORE/WPM collected over **$15,300 (greater than 4 points even without the commissions from the annuity sale)** from Plaintiffs' equity in their home based on points, commissions, fees, yield spread premiums, and junk fees. On a $370,000.00 loan which is what Plaintiffs received from Defendants, the U.S. National average of total fees is approximately **$5370.00.** [Source, Bankrate.com, November of 2005.]

79. All of these fees paid to these Defendants, and each of them, were excessive and/or unearned fees, and were unlawful kickbacks under RESPA because they were not reasonably related to the performance of lawful services.

80. Pursuant to 12 U.S.C. Section 2607 (d), Plaintiffs are entitled to recovered from Defendant, and each of them, and amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by Plaintiffs, as well as actual damages, court costs, attorneys' fees and any other amounts or damages permissible under RESPA.

81. By the actions described herein and as a proximate cause of Defendants conduct, Plaintiffs was damaged, in an amount to be proven at trial but not yet ascertained.

**3rd CAUSE OF ACTION**
**Violation of the Unfair Competition Act,**
**California Business and Processions Code § 17200 *et seq*.;**
**(Against all Defendants)**

82. Plaintiffs reallege and incorporate by this reference the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

83. Defendants, and each of them, have committed acts of unfair business practices, as defined by California Business and Professions Code Section 17200, et. seq., by engaging in acts and practices which include, but are not limited to their **"reverse mortgage bait and switch equity stripping annuity scheme"** as alleged above, and including but not limited to making loans based on borrower information which Defendants, and each of them, falsified; using bait and switch tactics; making loans without confirming or verifying borrower information; making loans without providing the borrower with sufficient, accurate and understandable information regarding the terms and conditions of the loan; making loans without providing the borrower with sufficient, accurate and understandable information regarding the nature and extent of the financial risk being assumed by the borrower; and making loans without regard to the financial ability of the borrower to pay; and buying and selling such loans among themselves.

84. These acts all as alleged above violate California Business and Professions Code Section 17200, et. seq. in the manner alleged above, and, based on information and belief, in the following further respects: Defendants' conduct threatens an incipient violation of various consumer protection statutes, or which violate the policy or spirit of such laws, including, but not limited to, California Business and Professions Code Section 17500; California Civil Code Section 1921; California Civil Code Section 1920; California Civil Code Section 1770; California Civil Code Section 1709, 1710 and 1711; Section 1639 of Title 15 of the United States Codes, together with 12 CFR 226.1 (Regulation Z).

85. All Defendants engaged in the following unfair business practices including, without limitation, the following:

(a) Implementing Defendants' "**reverse mortgage bait and switch equity stripping annuity scheme"**

(b) Engaging in predatory lending practices in dealings with Plaintiffs including but not limited to, the use of high pressure sales tactics and the falsification of Plaintiffs' loan application information;

(c) Self-dealing at the expense of Plaintiffs;

(d) Failing to provide notices and disclosures required by TILA and RESPA;

(e) Violating TILA; Violating RESPA; Violating the False Advertising Act, California Business and Professions Code Section 17500 *et seq*., or any other applicable statute;

(f) Engaging in Elder Abuse under California Welfare & Institutions Code Section 15600 *et seq*; Violating California Civil Codes Sections 1920 and 1921; Violating California Civil Code Sections 1709, 1710 and 1711;

(g) Charging and collecting fees in excess than those permitted under statute;

(h) Charging, collecting, splitting and distributing illegal kickbacks under the guise of fees and commission for services that had no reasonable value due to the Defendants "**reverse mortgage bait and switch equity stripping annuity scheme";**

(i) DOWNEY's sale and CENTRAL's purchase of the predatory loan which gave DOWNEY the financial motive to close its eyes and allow the "**reverse mortgage bait and switch equity stripping annuity scheme"** to be done to plaintiffs.

(j) WHITE/HFG/ELMORE/WPM misusing "stated income loans" towards seniors such as Plaintiffs who have easily verifiable monthly income in order to qualify Plaintiffs for inappropriate loans and which are accepted by lenders such as DOWNEY [despite the red flags on the loan application] in order to issue Plaintiffs such inappropriate loans and then pass the "stated income" fraud off by resell these inappropriate loans into the secondary market to CENTRAL.

86. As a direct and proximate result of the aforementioned acts, Defendants, and each of them, obtained illegal kickbacks from Plaintiffs' equity in their home. Plaintiffs has suffered injury as alleged herein.

87. Plaintiffs individually and on behalf of the public, seeks an order of this Court enjoining Defendants and prohibiting each of the said Defendants from predatory loan practices of the nature and kind herein alleged, as the public and Plaintiffs will be irreparably harmed if such an order is not granted.

88. Defendants have been unjustly enriched at the expense of the Plaintiffs, who therefore is entitled to equitable restitution and disgorgement of profits realized by Defendants as result of the unfair, unlawful, deceptive, untrue and/or misleading advertising practices.

89. Moreover, because Plaintiffs brings this action on behalf of himself and on behalf of the general public, he is entitled to reasonable attorneys' fees pursuant to California Code of Civil Procedure section 1021.5. Plaintiffs has sustained damages, including attorney fees and legal costs, and will sustain additional damages in prosecuting this action.

WHEREFORE, Plaintiffs prays for relief as set forth below.

## 4th CAUSE OF ACTION

**Violation of the False Advertising Act,**
**California Business and Professions Code § 17500 *et seq*.;**
**(Against Defendants WHITE/HFG/ELMORE/WPM)**

90. Plaintiffs hereby repeat and reallege all preceding paragraphs and incorporates the same as though fully set forth herein.

91. Defendants implemented their "**reverse mortgage bait and switch equity stripping annuity scheme"** as alleged above. The advertising, promotional materials and other written or oral promotion efforts undertaken by Defendants to induce consumers to enter into loan transactions contained statements that were deceptive, untrue and/or misleading, or omitted material information, and which were known, or by the exercise of reasonable care should have been known by Defendant to be deceptive, untrue and/or misleading, in violation of California Business and Professions Code section 17500 *et seq.*

92. Defendants' use of various forms of advertising call attention to or give publicity to the sale of their goods or services, and other practices, as set forth above, which were not as advertised or as otherwise represented, constituted unfair competition, deceptive untrue and/or misleading advertising and unlawful business practice within the meaning of California Business and Professions Code sections 17200 *et seq*., and 17500 *et seq.*

93. These advertisements and practices have deceived and injured Plaintiffs and are likely to deceive and injure the consuming public in violation of those sections.

94. Pursuant to California Business and Professions Code sections 17703 and 17535, Plaintiffs individually and on behalf of the public, seeks an order of this Court enjoining Defendants form continuing to engage in their false advertising practices. The public and Plaintiffs will be irreparably harmed if such an order is not granted.

95. Defendants have been unjustly enriched at the expense of the Plaintiffs, who therefore is entitled to equitable restitution and disgorgement of profits realized by Defendants as result of the unfair, unlawful, deceptive, untrue and/or misleading advertising practices.

96. Moreover, because Plaintiffs brings this action on behalf of himself and on behalf of the general public, he is entitled to reasonable attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

WHEREFORE, Plaintiffs prays for relief as set forth below.

**5th CAUSE OF ACTION**

**Constructive Fraud, California Civil Code, § 1573;**
**(Against all Defendants except CENTRAL)**

97. Plaintiffs hereby repeat and reallege all preceding paragraphs and incorporates the same as though fully set forth herein.

98. Defendants owed a fiduciary duty to Plaintiffs because they were acting in their capacities as DRE licensees and/or mortgage brokers and/or insurance agents.

99. Defendants breached that duty by, *inter alia*, implementing their "**reverse mortgage bait and switch equity stripping annuity scheme**" as alleged above, and misrepresenting or failing to disclose material facts about the transaction.

100. Specifically, WHITE/HFG/ELMORE/WPM falsely represented that Defendants wanted to and were able to get Plaintiffs a reverse mortgage; falsely represented that they could not do the reverse mortgage because Plaintiffs were $42,000 short; falsely told Plaintiffs that they a Plan B that was just as good as a reverse mortgage.

101. Defendants also concealed, certain material facts from Plaintiffs who was not aware of them including, but not limited to the following:

a) That Plaintiffs were qualified to do a reverse mortgage;

b) That Plaintiffs were not $42,000 short to do a reverse mortgage:

c) That Defendants' Plan B would entail negative amortization at a higher interest rate and margin than the reverse mortgage;

d) The true terms of their loan;

e) That Defendants had falsified Plaintiffs' income on the loan;

f) That using their true monthly income and assets, Plaintiffs did not qualify for the loan;

g) That Plaintiffs was not obligated to proceed with the loan;

h) That the loan carried a higher interest rate and higher margin as compared to the reverse mortgage, and that the loan carried negative amortization.

i) That Defendants' Plan B was being implemented not to benefit Plaintiffs but to benefit Defendants in terms of excessive fees and YSP.

102. Defendants intended to deceive Plaintiffs by the misrepresentations and nondisclosures.

103. Plaintiffs reasonably relied on the misrepresentations or nondisclosures because they are financially unsophisticated seniors who thought that Defendants were acting as their agent and in their best interests, unable to consummate real estate/annuity transactions without the help of professionals.

104. Had Plaintiffs known the truth, Plaintiffs would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their Scheme.

105. As a proximate result of their reasonable reliance on Defendants' misrepresentation(s), Plaintiffs sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiffs reasonably relied on Defendants' misrepresentations which were a substantial factor in causing Plaintiffs' damages.

106. Defendants are guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and where appropriate Plaintiffs should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs prays for relief as set forth below.

## 6th CAUSE OF ACTION

**Intentional Misrepresentation, California Civil Code §§ 1709-1710;**
**(Against all Defendants except CENTRAL)**

107. Plaintiffs hereby repeat and reallege all preceding paragraphs and incorporates the same as though fully set forth herein.

108. Defendants, and each of them, implement their **"reverse mortgage bait and switch equity stripping annuity scheme"** as alleged above.

109. Defendants knowingly and willfully induced Plaintiffs to enter into the loan agreement by making false oral statements and omitting material information regarding the terms of the loan and Plaintiffs' application.

110. Specifically in April of 2005, Defendants WHITE/HFG/ELMORE/WPM falsely represented that Defendants wanted to and were able to get Plaintiffs a reverse mortgage; falsely represented that they could not do the reverse mortgage because Plaintiffs were $42,000 short; falsely told Plaintiffs that they a Plan B that was just as good as a reverse mortgage; falsified Plaintiffs' income on the loan application.

111. Defendants knew that these representations were false at the time they were made or made the false representations in reckless disregard of the truth.

112. Defendants intended that Plaintiffs rely on the misrepresentations.

113. Plaintiffs reasonably relied on Defendants' misrepresentations.

114. Had Plaintiffs known the truth, Plaintiffs would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their Scheme.

115. As a proximate result of their reasonable reliance on Defendants' misrepresentation(s), Plaintiffs sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiffs reasonably relied on Defendants' misrepresentations which were a substantial factor in causing Plaintiffs' damages.

116. Defendant are guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiffs should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs prays for relief as set forth below.

## 7th CAUSE OF ACTION
### Concealment, California Civil Code §§ 1709-1710;
### (Against all Defendants except CENTRAL)

117. Plaintiffs hereby repeats and reallege all preceding paragraphs and incorporates the same as though fully set forth herein.

118. Defendants, and each of them, implement their "**reverse mortgage bait and switch equity stripping annuity scheme**" as alleged above.

119. Defendants knowingly and willfully induced Plaintiffs to enter into the loan agreement by making false oral statements and omitting material information regarding the terms of the loan and Plaintiffs' application.

120. Defendants concealed, certain material facts from Plaintiffs who were not aware of them including, but not limited to the following:

a. That Plaintiffs were qualified to do a reverse mortgage;

b. That Plaintiffs were not $42,000 short to do a reverse mortgage:

d. That Defendants' Plan B would entail negative amortization at a higher rate and margin than the reverse mortgage;

e. The true terms of their loan;

e. That Defendants' had falsified their income on the loan;

f. That using their true monthly income and assets, Plaintiffs did not qualify for the loan;

g. That Plaintiffs was not obligated to proceed with the loan;

h. That the loan carried a higher interest rate and higher margin as compared to the reverse mortgage, and that the loan carried negative amortization.

i. That Defendants' Plan B was being implemented not to benefit Plaintiffs but to benefit Defendants in terms of excessive fees and YSP.

121. Defendants were under a duty to disclose these facts to Plaintiffs because of Defendants' fiduciary relationship with Plaintiffs, yet Defendants chose to conceal or suppress these facts with an intent to defraud.

122. Plaintiffs was unaware of the facts and reasonably relied on Defendants' deception in proceeding with the loan transaction because Plaintiffs are a financially unsophisticated seniors who thought that Defendants were acting as their agent and in their best interests, unable to consummate real estate/annuity transactions without the help of professionals.

123. Had Plaintiffs known the truth, Plaintiffs would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their Scheme.

124. As a proximate result of their reasonable reliance on Defendants' deception(s), Plaintiffs sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiffs reasonably relied on Defendant's misrepresentations which were a substantial factor in causing Plaintiffs' damages.

125. Defendant were guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiffs should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs prays for relief as set forth below.

**8th CAUSE OF ACTION**

**Negligent Misrepresentation, California Civil Code §§ 1709-1710;**
**(Against all Defendants except CENTRAL)**

126. Plaintiffs hereby repeat and reallege all preceding paragraphs and incorporates the same as though fully set forth herein.

127. Defendants, and each of them, implement their "**reverse mortgage bait and switch equity stripping annuity scheme"** as alleged above.

128. Defendants falsely represented to Plaintiffs, *inter alia*, that the following important facts were true. Specifically, WHITE/HFG/ELMORE/WPM falsely represented that they were interested in giving Plaintiffs a reverse mortgage, that Plaintiffs did not qualify for a reverse mortgage, that Plaintiffs were $42,000 short to be able to do a reverse mortgage, that Defendants' Plan B was just as good as a reverse mortgage, Defendants also falsely represented Plaintiffs monthly income on the loan application.

129. Defendants had no reasonable basis for believing that the representations were true when the representations were made.

130. Defendants intended that Plaintiffs rely on the misrepresentations.

131. Plaintiffs reasonably relied on Defendants' misrepresentations. Plaintiffs relied upon Defendants' misrepresentations because they are financially unsophisticated seniors who thought that Defendants were acting as their agent and in their best interests, unable to consummate real estate/ annuity transactions without the help of professionals.

132. Had Plaintiffs known the truth, Plaintiffs would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their Scheme.

133. As a proximate result of their reasonable reliance on Defendants' misrepresentation(s), Plaintiffs sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiffs reasonably relied on Defendants' misrepresentations which were a substantial factor in causing Plaintiffs' damages.

134. Defendant were guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiffs should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs prays for relief as set forth below.

**9th CAUSE OF ACTION**
**Rescission/Cancellation, California Civil Code § 1689, and Court's Inherent Equitable Authority; (Against all Defendants)**

135. Plaintiffs hereby repeat and reallege all preceding paragraphs and incorporates the same as though fully set forth herein.

136. Plaintiffs' consent to the DOWNEY Mortgage Loan was obtained by Defendants, and each of them, through mistake, fraud, and undue influence by the implementation of their "**reverse mortgage bait and switch equity stripping annuity scheme**" as alleged above.

137. Defendants with intent to deceive Plaintiffs and to unduly influence them to consent to their Plan B knew or should have known Plaintiffs did not understand or comprehend, and which Defendants knew or should have known Plaintiffs did not have sufficient income to afford or pay, did fraudulently conceal from Plaintiffs that Plaintiffs was thereby placing their sole material possession, their home, at severe risk of loss.

138. The active misrepresentations of Defendants, and each of them, and their silence and deceit, were false and fraudulent.

139. At the time Defendants, and each of them, made the misrepresentations and engaged in the concealment and deceit as alleged herein, and at the time Plaintiffs signed any of the Loan Application and/or the Loan Documents, Plaintiffs did not know that the misrepresentations, deceit and inducements by Defendants were false and fraudulent, but instead believed them to be truthful and reasonably relied on them, thereby entering into the DOWNEY loan without the benefit of the true facts, and by duress, undue influence and coercion and mistake.

140. As a result of the fraudulent misrepresentations, deceit and inducements by Defendants, and each of them, Plaintiffs has incurred substantial financial damages as herein alleged. Plaintiffs

hereupon serves notice of their demand for rescissionary damages on the grounds of fraudulent misrepresentations and inducement, duress, undue influence, coercion and mistake by Defendants, an each of them, as alleged herein. To the extent Plaintiffs' loan transactions documents contain an exculpatory clause in favor of Defendants purporting to release Defendants from their own fraud, Plaintiffs alleges that such a clause is unenforceable pursuant to Civil Code section 1668 and other applicable law.

141. Plaintiffs hereby demands restitution from Defendants, and each of them, in an amount that will restore to Plaintiffs the amount of home equity they previously held prior to the DOWNEY Loan. Plaintiffs further alleges that Defendants, and each of them, have been unjustly enriched by their "**reverse mortgage bait and switch equity stripping annuity scheme"** as alleged above, and that the amount of all commissions earned by Defendants on the DOWNEY and CENTRAL on the Loan and all profits earned by Defendants must be disgorged by Defendants to Plaintiffs.

WHEREFORE, Plaintiffs prays for relief as set forth below.

## 10th CAUSE OF ACTION
**Breach of Fiduciary Duty;**
**(Against Defendants WHITE/HFG/ELMORE/WPM)**

142. Plaintiffs hereby repeat and reallege all preceding paragraphs and incorporates the same as though fully set forth herein.

143. California law imposes on the insurance agents/ real estate agents/and mortgage brokers, as fiduciaries, the same obligation of undivided service and loyalty that it imposes on a trustee in favor of a beneficiary.

144. Defendants WHITE/HFG/ELMORE/WPM owed Plaintiffs fiduciary duties of utmost loyalty, good faith and diligence and breached those duties by, *inter alia:*

a) Implementing their "**reverse mortgage bait and switch equity stripping annuity scheme"** as alleged above;

b) Failing to explain the terms of the loan transactions to Plaintiffs;

c) Inducing Plaintiffs to sign loan documents by either misrepresenting the terms or failing to disclose the terms;

d) Failing to disclose all charges incurred in connection with the refinance;

e) Inducing Plaintiffs to sign a loan that is more financially burdensome than the original loan presented to Plaintiffs in their original solicitation;

f) Falsifying Plaintiffs' income and assets on their loan application;

145. Defendants engaged in their conduct alleged herein for the purpose of advancing their own financial interest and in callous disregard of the foreseeable financial consequences to Plaintiffs.

146. Defendants, and each of them, operated as agents of Defendant DOWNEY and abandoned their fiduciary duty to Plaintiffs.

147. Defendants failed to act diligently by failing to evaluate Plaintiffs' ability to repay the loans, failing to disclose all material terms of the transaction, and failing to comply with applicable consumer protections intended to benefit Plaintiffs.

148. As a result of Defendants' breach of their fiduciary duties to Plaintiffs, Plaintiffs has sustained damages to be proved at trial but not yet ascertained.

149. Defendants' conduct as alleged herein was a substantial factor in causing the damages sustained by Plaintiffs, and as a direct, proximate and legal result of the above alleged breach of fiduciary duty, Plaintiffs has suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, damages for loss of property and money, and damages for emotional distress.

150. Defendants were guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and where appropriate Plaintiffs should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs prays for relief as set forth below.

**11th CAUSE OF ACTION**

**Negligence;**

**(Against all Defendants except CENTRAL)**

151. Plaintiffs hereby repeat and reallege all preceding paragraphs and incorporates the same as though fully set forth herein.

152. Because a mortgage loan broker and a mortgage loan lender is required to exercise reasonable care and diligence in any transaction and is bound to exercise their or her skill for the benefit of the principal, the agent is liable for any damages suffered by the principal as a result of any negligence in the performance of their or her agency duties.

153. Defendants, and each of them, owed Plaintiffs a duty to act with that degree of skill, prudence and diligence as other mortgage brokers and lenders of ordinary skill and capacity in the performance of the services that they undertake.

154. A reasonably prudent mortgage loan broker would not have implemented their **"reverse mortgage bait and switch equity stripping annuity scheme"** as alleged above nor would they have directed Plaintiffs to the DOWNEY loan products nor originated such loans.

155. Defendant DOWNEY is secondarily liable for the actions of Defendants WHITE/HFG/ELMORE/WPM, who functioned as the agents for Defendant DOWNEY, and DOWNEY also failed to properly consider, investigate, evaluate or audit Plaintiffs' loan application and/or ability to repay loans and/or the actions of their agents.

156. Plaintiffs are informed and believes that Defendants also failed to consider the usual underwriting factors for assessing creditworthiness when they loaned to Plaintiffs, and in fact that Defendant WHITE/HFG/ELMORE/WPM all falsified Plaintiffs' loan application and deceived Plaintiffs as to the true terms of the loan.

157. Defendants, and each of them, knew or should have known to utilize the best practices for underwriting, originating and issuing loans when considering the DOWNEY loan to Plaintiffs but negligently failed to do so.

158. Defendant WHITE/HFG/ELMORE/WPM, breached their duty by encouraging Plaintiffs to sign a loan with different terms than those they had represented to Plaintiffs on their original loan application solicited by phone.

159. By their conduct as alleged herein, Defendants were the proximate cause of damages sustained by Plaintiffs in an amount to be proven at trial but not yet ascertained.

WHEREFORE, Plaintiffs prays for relief as set forth below.

## 12th CAUSE OF ACTION

**Breach of Implied Covenant of Good Faith and Fair Dealing;**
**(Against Defendant DOWNEY and CENTRAL)**

160. Plaintiffs reallege and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

161. The DOWNEY Loan, including the promissory note and deed of trust, imposed upon Defendant DOWNEY a covenant of good faith and fair dealing in performing the terms and conditions of the DOWNEY Loan agreement and carrying out its purpose and intent.

162. Defendant DOWNEY breached the implied covenant of good faith and fair dealing when Defendant DOWNEY:

i. prepared and directed Plaintiffs to sign the Loan Application;

ii. secretly and fraudulently failed to take any steps to verify any of the information contain in the Loan Application;

iii. changed the stated income on the loan application in order to qualify the loan, and kept this fact hidden from Plaintiffs;

iv. approved the DOWNEY Loan based on information they knew or should have known to be false and inaccurate;

v. fraudulently induced Plaintiffs to accept the DOWNEY Loan;

vi. inserted a pre-payment penalty rider to the DOWNEY loan; and

vii. engaging in Elder Abuse under California Welfare & Institutions Code Section 15600 *et seq.*;

viii. overcharging for fees, commissions, points, YSP's;

ix. Other acts of which Plaintiffs are presently unaware.

163. As a proximate result of the aforementioned acts and omissions by Defendant DOWNEY, Plaintiffs has suffered loss of monies in a sum to be proven at the time of trial. It has also become reasonably necessary for Plaintiffs to retain counsel to recover amounts due under the contract.

164. The aforementioned acts were performed by Defendant DOWNEY maliciously, fraudulently and oppressively entitling Plaintiffs to punitive damages in an amount appropriate to punish the Defendant.

WHEREFORE, Plaintiffs prays for relief as set forth below.

## 13th CAUSE OF ACTION

**Declaratory Relief (Against Defendants DOWNEY and CENTRAL)**

165. Plaintiffs reallege and incorporate by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

166. As alleged above, an actual controversy exists between the parties regarding their rights and liabilities under the contracts and the cited statutes.

167. Plaintiffs request a declaration of the parties' rights and liabilities under the contracts and the statutes cited.

## 14th CAUSE OF ACTION

**Elder Abuse: California Welfare & Institutions Code Section 15600 *et seq*;**
**(Against all Defendants except CENTRAL)**

168. Plaintiffs refers to and incorporates all preceding allegations as if set forth here in full.

169. Defendants, and each of them, financially abused Plaintiffs by implementing their "**reverse mortgage bait and switch equity stripping annuity scheme"** as alleged above. Section 15610.07(a) of the Welfare and Institutions Code defines "Abuse of an Elder" in general as "Physical abuse, neglect, **financial abuse**, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering" (emphasis added). Further, section 15600 *et seq.* of the Welfare and Institutions Code defines Financial Abuse as a situation where any person or entity does

or assists in, "taking, secreting appropriating, or retaining real or personal property of an elder or dependant adult to a wrongful use or with intent to defraud, or both." *Cal. Welf. & Inst. Code* § 15610.30(a)(2) (2005).

170. Defendants violated Plaintiffs' trust by implementing their "**reverse mortgage bait and switch equity stripping annuity scheme"** and appropriating, secreting, and taking Plaintiffs money and investments for their own benefit and to the harm of Plaintiffs. Thereafter, Defendants concealed those facts after the Plaintiffs' trust was violated as set forth in more detail above. Further, Defendants knew or should have known that their conduct was directed towards seniors. Plaintiffs suffered emotional damages as a result as Defendants' conduct as alleged herein was malicious and intended to cause and did cause Plaintiffs to suffer pain and mental suffering in the form of mental anguish, emotional and physical distress, humiliation, worry and anxiety. As a proximate result of the bad faith conduct of the defendant and by violating Plaintiffs' trust, Plaintiffs suffered substantial loss.

171. Defendants, and each of them, are guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiffs should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiffs prays for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs prays for judgment on the above causes of action against Defendants as follows:**

1. That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. section 1367;
2. That the Court declare that Defendants violated applicable provisions of federal and state law;
3. That the Court enjoin all unlawful practices complained of in this action and impose affirmative injunctive relief requiring Defendants, their partners, agents, employees, assignees, and all person acting in concert or participating with them, to take affirmative action to immediately implement policies designed to ensure: (1) Defendants' stop their

"**reverse mortgage bait and switch equity stripping annuity scheme";** (2) that all prospective borrowers' loan applications do not contain false information, (2) a thorough evaluation of all prospective borrowers' ability to repay any loans made available to them, (3) training regarding applicable lending laws for all of defendants' employees and agents;

4. That the Court order Defendants to immediately rescind the loans and return all cost to Plaintiffs associated with the loan; and that the Court order that if the loan has been sold, that DOWNEY be made to repurchase the loan and then rescind the loan and return all cost to Plaintiffs associated with the loan;
5. That the Court award monetary, statutory, compensatory and punitive damages, where appropriate, to Plaintiffs according to proof;
6. That the Court award treble damages pursuant to California Civil Code Section 3345 where appropriate because Defendants knew or should have known that their conduct was directed to Plaintiffs who are senior citizen, and that Defendants' conduct would most likely cause this senior Plaintiffs to suffer loss or encumbrance of their primary residence and/or substantial loss of property set aside for retirement, and that Plaintiffs were more vulnerable than other members of the public to the Defendants' conduct.
7. That the Court award Plaintiffs costs of suit, including reasonable attorney's fees; and
8. That the Court award Plaintiffs all other relief as the Court deems just.

DATED: 6/12/07 LAW OFFICES OF RONALD A. MARRON, APLC

By: [signature]
Ronald A. Marron, Esq.
Attorneys for Plaintiffs

**JURY TRIAL DEMANDED**

Plaintiffs hereby demands an expedited trial by jury due to their age.

Dated: June 11, 2007

By: [signature]
Ronald A. Marron, Esq.
*Attorneys for Plaintiffs*

JS44

(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

RABE CELEDONIO ;
RABE EDITH

**DEFENDANTS**

WHITE BRIAN
ELMORE KEVIN
HERITAGE FUNDING GROUP, INC.
WEST POINT MORTGAGE, INC.
DOWNEY SAVINGS & LOAN ASSOCIATION, FA
PRINCIPAL LIFE INSURANCE CO.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** SAN DIEGO
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** SAN DIEGO
**(IN U.S. PLAINTIFF CASES ONLY)**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

FILED JUN 12 2007 CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA DEPUTY

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

LAW OFFICE OF RONALD MARRON
3636 4TH AVE, STE. 202
SAN DIEGO, CA 92103 619-696-9006

**ATTORNEYS (IF KNOWN)**

'07 CV 1070 BTM NLS

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX (For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

12 USC 2601 (RESPA VIOLATION) 15 USC 1601 (TRUTH IN LENDING)

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment &Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153Recovery of Overpayment of Veterans Benefits
- ☐ 160 Stockholders Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Eiectmant
- ☐ 240 Tort to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury-Medical Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☒ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prisoner Conditions

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (13958)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reappointment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities Exchange
- ☐ 875 Customer Challenge 12 USC
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State
- ☐ 890 Other Statutory Actions

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding ☐ 2 Removal from State Court ☐ 3 Remanded from Appelate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 **DEMAND $** Check YES only if demanded in complaint: **JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE Roger T. Benitez Docket Number 07CV0287

DATE 6/11/07 SIGNATURE OF ATTORNEY OF RECORD Ronald Marron

PAID $350 6/12/07 BH KIPTH 139274

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 139274 - BH**
*** * C O P Y * ***
**June 12, 2007**
**13:21:28**

**Civ Fil Non-Pris**
USAO #.: 07CV1070 CIV. FIL.
Judge..: BARRY T MOSKOWITZ
Amount.: $350.00 CK
Check#.: BC# 1669

**Total-> $350.00**

FROM: RABE V. WHITE ET AL
CIVIL FILING